IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
BETH D. DAVIS,                    )
                                  )
          Plaintiff,              )
                                  )
     v.                           )    Case No. 13-1328-RDR
                                  )
                                  )
DILLON COMPANIES, INC.            )
                                  )
          Defendant.              )
```

**MEMORANDUM AND ORDER**

Plaintiff alleges that she was terminated from her position as a Loss Prevention Specialist for defendant because of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq</u>. This case is now before the court upon defendant's motion for summary judgment. Doc. No. 33. The court concludes that defendant's motion should be granted because plaintiff has failed to make an adequate showing that the reasons given for plaintiff's discharge were pretextual.

I.   SUMMARY JUDGMENT STANDARDS

Summary judgment is warranted if the materials on record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.CIV.P. 56(a). The court views "all of the facts in the light most favorable to the non-movant and reasonable inferences from the record must be drawn in favor of the non-

1

moving party." Piercy v. Maketa, 480 F.3d 1192, 1197 (10th Cir. 2007). From this viewpoint, the court attempts to determine whether a reasonable jury could return a verdict in favor of the non-moving party. Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004). "While we view the record in the light most favorable to the non-moving party, that party must still identify sufficient evidence requiring submission to the jury to survive summary judgment." Piercy, 480 F.3d at 1197. In other words, the court may consider evidence produced by the moving party as well as the absence of admissible evidence in favor of an essential element of the non-moving party's claim. Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000). "If the evidence [in support of a claim] is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986)(interior citations omitted). "[P]urely conclusory allegations of discrimination" which are devoid of "concrete particulars" are not sufficient to avoid summary judgment. Pucino v. Verizon Wireless Communications, Inc., 618 F.3d 112, 119 (2d Cir. 2010)(interior quotations omitted); see also, Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998)(non-moving party must set forth specific facts admissible in evidence from which a rational jury could find for non-movant). "Unsubstantiated allegations carry no probative weight . . .

evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." Bones, 366 F.3d at 875. Therefore, plaintiff's belief that she was discriminated against is not sufficient to rebut evidence that plaintiff was terminated for nondiscriminatory reasons. Sharon v. Yellow Freight Sys., Inc., 872 F.Supp. 839, 847 (D.Kan. 1994).

## II.  UNCONTROVERTED FACTS

Defendant operates a chain of grocery stores. Plaintiff worked for more than 20 years for defendant. In February 2011, plaintiff was offered a position as a "Loss Prevention Specialist" ("LPS") within defendant's Loss Prevention Department. For this position, plaintiff interviewed with Rock Regehr, the Division Manager for the Loss Prevention Department. Plaintiff reported to Sean McKinney who was a District Manager. McKinney reported to Regehr.

Part of plaintiff's job was to identify and catch shoplifters and to complete thorough reports regarding shoplifting incidents and loss prevention activities. Such reports could be needed to prosecute a shoplifter or to defend a lawsuit brought by a suspected shoplifter. Defendant's loss prevention policy manual states in part on page 13: "When you report or inform your supervisor of situations you are involved with, it is expected that the information is not embellished, altered or in anyway untrue to the best of your knowledge." Doc.

No. 34-11, p. 13. The manual also specifically warned that the act of "[k]nowingly falsifying, omitting or misrepresenting any known facts . . . concerning an incident" was grounds for immediate termination without prior warning. Id. at p. 14. Mr. Regehr has stated that defendant considers honesty in report writing to be of prime importance. Doc. No. 44-2. Plaintiff understood that a high degree of honesty and integrity was an essential part of her job duties. Plaintiff knew if she were dishonest she could be disciplined or likely terminated. According to the manual, the use of "excessive force" was also cause for immediate termination without prior warning. Doc. No. 34-11, p. 14. The pursuit of a suspect after the suspect had entered a vehicle or left store property was considered cause for discipline resulting in either suspension without pay or termination. Id. at p. 15.

According to defendant's shoplifting policy, before contact could be made with a suspected shoplifter, five elements had to be met: 1) a LPS must observe the item being selected from the display shelf and know what the item is; 2) if the shoplifter concealed the item, the LPS must observe the concealment and know where the item is concealed; 3) the LPS must maintain constant observation of the suspect to ensure the item is not disposed of unnoticed; 4) the LPS must know that the suspect failed to pay for the merchandise and not stop the suspect prior

4

to clearing the checkout lane; and 5) the suspect must be allowed to walk past the last point of sale. Doc. No. 34-10, Ex. 7, p.2.

A LPS is not authorized by defendant's policy to use physical force except in instances of self-defense that cannot be avoided. A LPS may not initiate physical contact with a suspect or lay hands on a suspect. A suspect who refuses to cooperate or to return to the store or who runs is to be permitted to leave by a LPS without pursuit. Like the manual, the shoplifting policy provides that excessive force may be grounds for discipline up to and including termination. Plaintiff signed a form which acknowledged the shoplifting policy. Doc. No. 34-10, Ex. 12.

Plaintiff asserts, however, that the training she received from Sean McKinney encouraged circumvention of the policy. McKinney allegedly trained plaintiff that an LPS should place himself or herself in front of a suspected shoplifter so that the suspect would be induced to touch the LPS to exit the store. Doc. 39-1, ¶¶ 13-15. The first touch by the suspect created a "game on" situation which gave the LPS license to make physical contact with the suspect. Plaintiff denied, however, that McKinney taught her to tackle a suspect or jump on a suspect's back to keep a suspect from leaving. Doc. No. 34-5, Dep. Ex. A, p. 186.

On October 12, 2012, plaintiff was involved in a shoplifting incident at a Wichita store. According to her report of the incident, she noticed a young male carrying a case of beer and other items walk past the checkout lanes without paying. Plaintiff approached the suspect, identified herself as a LPS and asked to see a receipt for the items. The suspect told plaintiff that he must have left the receipt at the register and he was persuaded by plaintiff to return to the register. Before he reached that point, the suspect placed the items down and proceeded to walk toward the store exit. Plaintiff told the suspect to stop and, according to her report, the suspect pushed plaintiff attempting to get around her. Plaintiff attempted to keep the suspect from exiting the store, but the suspect shoved plaintiff and ran around her. Plaintiff reported that, as the suspect pushed her, she felt a sharp pain in and around her right ear and that upon reviewing the video found that the suspect slugged her and then ran around her.

On October 16, 2012, plaintiff was involved in a shoplifting incident at a store in El Dorado, Kansas. Plaintiff observed a suspect conceal some merchandise. Video indicates that plaintiff then broke continuous observation and went to the front of the store to wait for the suspect to exit. Plaintiff admits that this was a violation of defendant's shoplifting policy. In her report of the incident, plaintiff states that

6

she observed the suspect leave the checkout area without paying and then introduced herself to him as store security. She also states that the suspect "rammed" her and that she was able to restrain the suspect on the floor in front of the exit door. In her deposition, plaintiff admits that her description of the suspect "ramming" plaintiff was not accurate. Doc. No. 34-5, Ex. A, pp. 180-81.

Rock Regehr, the division manager looked at the video the October 16, 2012 shoplifting incident in El Dorado. He concluded that the suspect never "rammed" plaintiff or anyone else; that plaintiff initiated physical contact with the suspect; that plaintiff used excessive force by wrapping her arms around the suspect's neck, climbing on his back and tackling him to the ground; and that plaintiff failed to maintain continuous observation of the suspect.

Upon being informed of the October 12, 2012 shoplifting incident in Wichita, Regehr watched the video of that event. He concluded that the suspect had not "slugged" plaintiff as she represented in her report.

Regehr decided that plaintiff had violated company policy: 1) by initiating physical contact with suspects and using excessive force; 2) by failing to maintain continuous surveillance of a suspect before confronting him; and 3) by submitting inaccurate reports concerning the October 12 and

7

October 16 incidents. Regehr met with plaintiff about the incidents on Friday, October 19, 2012. He told her of his conclusions and suspended her without pay, subject to discharge upon further review. The report of the meeting, signed by Regehr, plaintiff, and another employee, stated that plaintiff was being disciplined for violating company policy, engaging in unsafe behavior, and misconduct or dishonesty. Plaintiff was terminated on Monday, October 22, 2012.

Plaintiff alleges that defendant treated her more harshly than several similarly situated male employees. One of these employees is Tony Salinas who was a district manager for defendant. Plaintiff asserts that he violated company policy in July 2012 by leaving the premises to follow a suspect. Plaintiff does not claim that Mr. Salinas lost continuous observation of a suspect, initiated physical contact, used excessive force or filed a false or inaccurate report. Mr. Salinas also was not supervised by Mr. Regehr.

Another alleged comparator is Erin Dreiling who, in 2007 or 2008, ran out of a store after a suspect who had attempted to pass a bad check. During the chase a vehicle was damaged in the parking lot. Again, there is no indication that Mr. Dreiling lost continuous observation of a suspect, initiated physical contact, or filed a false or inaccurate report.

A third alleged comparator is Kevin Waymire who, in 2007 or 2008, was injured during a fight with a shoplifting suspect. Plaintiff does not claim that Mr. Waymire initiated physical contact. Plaintiff also does not assert that Mr. Waymire lost continuous observation of a suspect or placed false information in a report. Plaintiff does not directly assert that Mr. Waymire violated shoplifting policy in any way. Doc. No. 34-6, p. 220 of plaintiff's deposition.

Another comparator is Sean McKinney. Plaintiff alleges that he chased a shoplifting suspect out of a store. Plaintiff does not accuse Mr. McKinney of initiating physical contact with a suspect or putting false information in a report. She indicates that he may not have maintained continuous observation with the suspect in the store, but admits that observation of the suspect was maintained by herself at McKinney's direction because she was working with McKinney at the same store at the time.

Cody Garnett is also a comparator. Plaintiff and Garnett were working at a store on July 26, 2012. Plaintiff alleges that Garnett grabbed a suspect or, at least, the suspect's purse, when the suspect attempted to leave the store. Plaintiff was with Garnett at the time and assisted in detaining the suspect. Plaintiff does not allege that continuous observation was lost or that Garnett placed false information in a report.

9

Neither plaintiff nor Garnett was disciplined for any policy violation which may have occurred during this incident.

Josh Preble was involved in two incidents in September 2011 which plaintiff alleges were similar to the incidents leading to plaintiff's termination. One incident supposedly involved Preble chasing a suspect from a store. Plaintiff did not witness this incident and obtained information about it from another employee, James Aubrey, who also did not witness the chase, but spoke to Preble about it. Preble wrote the report of the incident and stated that an off-duty police officer chased and caught the suspect, and that Preble assisted in detaining the suspect. There is no evidence that defendant had knowledge that Preble failed to maintain continuous observation, that Preble initiated physical contact or used excessive force, or that Preble submitted any false information in a report.

In the second incident involving Preble, plaintiff alleges that he tackled a suspect to the ground after he asked the suspect for a receipt for goods she was carrying in a shopping cart. Plaintiff based this allegation upon information received from Mr. Aubrey. Preble alleged in his report of the incident that the suspect became violent, pushed a cart at him and then ran into him. There is no testimony in the record from an eyewitness. Aubrey watched a surveillance video of the incident, but testified that he was not in a position to know

whether Preble used force appropriately to defend himself. Doc. No. 34-9, p. 71 of deposition. Again, there is no evidence that defendant had knowledge that Preble violated the policy requiring continuous observation, that he initiated physical contact or that he placed false information into a report.

John Madden is another comparator. Plaintiff alleges that Mr. Madden jumped into a vehicle driven by shoplifting suspects, who eventually dropped him off down the road. Plaintiff obtained this information from unspecified sources. The report of the incident indicates that Mr. Madden reached into a vehicle to retrieve stolen merchandise when the vehicle drove away with Madden inside. Madden was not accused of losing continuous observation or initiating physical contact or filing a report with false information. But, he was disciplined by defendant for violating defendant's policy by attempting to retrieve stolen products from a vehicle outside of the store. Six months later, Madden was terminated for actions relating to a different incident in which he lost continuous observation of a shoplifting suspect. Doc. Nos. 44-2 and 44-3.

Finally, James Aubrey has been raised as a possible comparator. Mr. Aubrey and plaintiff used physical force to restrain a customer, allegedly in self-defense, after the customer had shoved his cart into them. The use of force in self-defense is not a violation of defendant's policy. Neither

11

plaintiff nor Mr. Aubrey received discipline as a result of this incident.

III. ANALYTICAL FRAMEWORK

Here, it is agreed that there is no direct evidence of gender bias or discrimination. Therefore, plaintiff must rely upon indirect or circumstantial evidence of discrimination to prove her claim. This requires reference to the analytical framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, plaintiff has the initial burden of establishing a prima facie case of discrimination. Young v. Dillon Companies, Inc., 468 F.3d 1243, 1249 (10th Cir. 2006). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. If the employer satisfies this burden, then the onus is shifted back to plaintiff to show that the employer's proffered justification is pretextual. Id.

IV. THE COURT SHALL ASSUME THAT PLAINTIFF HAS PRESENTED A PRIMA FACIE CASE OF DISCRIMINATION AND PROCEED TO CONSIDER WHETHER A REASONABLE JURY COULD CONCLUDE THAT DEFENDANT'S REASONS FOR TERMINATION ARE PRETEXTUAL.

Defendant's argument for summary judgment is that plaintiff cannot present sufficient evidence of discrimination to either present a prima facie case of gender discrimination or to prove that defendant's proffered nondiscriminatory reasons for

plaintiff's termination were pretextual.  For purposes of this order, the court shall assume that plaintiff's assertions that she did not commit all of the alleged policy violations claimed by defendant and her assertions that male employees were not discharged for similar infractions are sufficient in this context to demonstrate a prima facie case of discriminatory treatment.  The court makes this assumption in part because the requirement of making a prima facie showing of discrimination is not supposed to be an onerous burden.  See Orr v. City of Albuquerque, 417 F.3d 1144, 1149 (10th Cir. 2005).  In addition, the court seeks to avoid a duplication of analysis because the evidence upon which plaintiff relies to show an inference of discrimination necessary for a prima facie case, is the same evidence the court must analyze to determine whether defendant's proffered nondiscriminatory reasons for plaintiff's discharge were pretextual.  See Sorbo v. United Parcel Service, 432 F.3d 1169, 1173-74 (10th Cir. 2005)(correct analysis of pretext issue obviates necessity of applying correct prima facie standard).

V.  A REASONABLE JURY WOULD NOT FIND THAT PLAINTIFF COULD PROVE PRETEXT UPON THE RECORD BEFORE THE COURT.

There is no dispute that defendant has presented evidence of a non-discriminatory justification for plaintiff's discharge which shifts the burden of showing discrimination or pretext back to plaintiff.  Plaintiff need not actually show that "the

13

real reason was discrimination – the fact of pretext alone may allow the inference of discrimination." Doebele v. Spring/United Mgmt. Co., 342 F.3d 1117, 1135-36 (10th Cir. 2003).

A plaintiff may show pretext by demonstrating that the alleged nondiscriminatory reasons for discharge are "so weak, implausible, inconsistent or incoherent" that a reasonable fact finder could conclude that they were not honestly held, but rather a "subterfuge for discrimination." Young, 468 F.3d at 1250. Evidence of pretext may also include prior treatment of the employee, the employer's policy and practice regarding minority employment (including statistical evidence); disturbing procedural irregularities; and the use of subjective criteria. Richardson v. Gallagher, 553 Fed.Appx. 816, 824 (10th Cir. 2014)(interior quotation omitted). It is particularly relevant to this case that "[p]roof of 'differential treatment of similarly-situated employees may support a finding of pretext.'" Potter v. Synerlink Corp., 562 Fed.Appx. 665, 675 (10th Cir. 2014)(quoting EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1199 (10th Cir. 2000)(emphasis omitted)).

The court must remember that it is the employer's perception of the employee's performance that is relevant, not the plaintiff's evaluation of her own performance. Salazar v. City of Commerce City, 535 Fed.Appx. 692, 696 (10th Cir. 2013)(citing Metzler v. Fed. Home Loan Bank, 464 F.3d 1164, 1179

14

(10th Cir. 2006)). The issue is not whether an employer's conclusion about plaintiff's conduct was wrong, but whether it was honestly held. Young, 468 F.3d at 1250. So, we look at the facts as they appeared to the decisionmaker. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1231 (10th Cir. 2000). In addition, when comparing alleged similarly-situated employees, the court must remember that to be "similarly-situated," an employee must deal with the same supervisor, be subjected to the same standards governing performance and discipline, and have engaged in conduct of comparable seriousness. EEOC v. PVNF, LLC, 487 F.3d 790, 801 (10th Cir. 2007)(interior quotation omitted). It is also necessary to prove that the alleged violations committed by similarly-situated employees were known to management – otherwise the evidence just tends to show that fellow employees were better at escaping detection. Doke v. PPG Industries, Inc., 118 Fed.Appx. 366, 369 (10th Cir. 2004); see also Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 143 (2d Cir. 2010) cert. denied, 131 S.Ct. 2970 (2011); Lollis v. City of Eufala, 249 Fed.Appx. 20, 26 (10th Cir. 2007); Knight v. Baptist Hospital, 330 F.3d 1313, 1317 n.5 (11th Cir. 2003); Matthews v. Euronet Worldwide, Inc., 505 F.Supp.2d 850, 864 (D.Kan. 2007) aff'd, 271 Fed.Appx. 770 (10th Cir. 2008); Smith v. Potter, 2006 WL 3050814 *6 (D.Kan. 10/25/2006) aff'd, 252 Fed.Appx. 224 (10th Cir. 2007).

Plaintiff relies primarily upon comparisons to alleged similarly-situated employees for proof of pretext. But, these comparisons fail for a number of reasons. Plaintiff is alleged to have placed false information in reports, initiating physical contact and using excessive force, and failing to maintain continuous surveillance. These were the conclusions of Mr. Regehr after his consideration of various items. None of the alleged comparators was accused by plaintiff of committing all three violations or of any violation involving dishonesty. So, plaintiff has not identified a similarly-situated employee who was engaged in conduct of comparable seriousness. Secondly, there is no evidence that Mr. Regehr, the decisionmaker for defendant in this case, had knowledge of <u>any</u> of the three violations by an employee other than plaintiff but failed to impose discipline. Finally, a large part of plaintiff's "evidence" of alleged policy violations by other employees would be inadmissible at trial because it does not rely upon personal knowledge or some other proper foundation. See <u>Johnson v. Weld County, Colo.</u>, 594 F.3d 1202, 1210 (10th Cir. 2010)(refusing to consider evidence of discrimination based upon complaints of others related by plaintiff); <u>Young</u>, 468 F.3d at 1252 (refraining from considering hearsay statements made to plaintiff); <u>Hardy v. S.F.Phosphates Ltd. Co.</u>, 185 F.3d 1076, 1082 n.5 (10th Cir. 1999)(refusing to consider sexual harassment

16

complaints based upon inadmissible hearsay statements). With the exception of plaintiff's testimony regarding Mr. McKinney and Mr. Garrett, and possibly some of Mr. Aubrey's testimony as to Mr. Preble, plaintiff's evidence as to potential comparators is not based upon personal knowledge.

Plaintiff has also suggested that Mr. Regehr may not be credible and that her contradictory interpretation of surveillance videos provides for a jury issue. The court disagrees. Plaintiff has failed to proffer evidence upon which a reasonable jury could conclude that Mr. Regehr did not honestly hold his stated opinion about plaintiff's alleged policy violations. Therefore, the court should defer to the facts as they appeared to the decisionmaker. Salazar, 535 Fed.Appx. at 696; Young, 468 F.3d at 1251-52. Further, plaintiff has failed to produce evidence indicating the Mr. Regehr's explanation for plaintiff's discharge was incoherent, weak, inconsistent or contradictory.

Finally, plaintiff has suggested that an inference of discrimination may be drawn from the fact that, after plaintiff was fired, only one female loss prevention specialist was being employed by defendant.[1] However, the Tenth Circuit has stated that "[s]tatistics taken in isolation are generally not

---

[1] Defendant has presented evidence that: there was also a female Loss Prevention Manager at the time of plaintiff's employment; both the female LPS and the female Loss Prevention Manager remain employed by defendant; and the female LPS recently was promoted to District Loss Prevention Manager.

17

probative of … discrimination," Jones v. Unisys Corp., 54 F.3d 624, 632 (10th Cir. 1995), and "statistical evidence on its own will rarely suffice to show pretext." Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1115 (10th Cir. 2007)(interior quotation omitted). "Even statistics which show prolonged and marked imbalance may not be controlling in an individual discrimination case where a legitimate reason for the employer's action is present." Turner v. Pub. Serv. Co., 563 F.3d 1136, 1147 (10th Cir. 2009)(interior quotation omitted). Plaintiff's statistical evidence does not attempt to account for nondiscriminatory explanations for the difference in number of male and female loss prevention specialists. We find that it is insufficient evidence to produce an inference of discrimination in this case. See Brown v. U.S.D. 501, 459 Fed.Appx. 705, 710 (10th Cir. 2012)(statistical evidence of gender and race of employees is meaningless without additional information as to the gender and race of job applicants).

VI. CONCLUSION

In conclusion, because a reasonable jury could not determine upon this record that the reasons given for plaintiff's termination were pretextual, the court shall grant defendant's motion for summary judgment.

Finally, the record reflects that the court provisionally granted defendant permission to file Doc. Nos. 34 and 44 as

sealed documents.  Upon review and consideration, the court shall direct that defense counsel file a copy of the sealed documents for public viewing redacting only those portions that should be withheld from public viewing because of their confidential nature.

**IT IS SO ORDERED.**

Dated this 2nd day of October, 2014, at Topeka, Kansas.


                                    s/ RICHARD D. ROGERS
                                    Richard D. Rogers
                                    United States District Judge